# United States Court of Appeals
### for the
# Third Circuit

CLEAR SPRING PROPERTY AND CASUALTY COMPANY,

*Appellee,*

v.

MATADOR SPORTFISHING LLC,

*Appellant.*

## JOINT STATUS REPORT

The parties, by and through their respective undersigned counsel, file the within Joint Status report and in support thereof aver as follows:

1.     This Court's Order dated March 22, 2023, stated that a briefing schedule in this matter would not be issued until a decision was issued by the Supreme Court of the United States in *Great Lakes Insurance SE v. Raiders Retreat Realty Co., LLC*. (*See* ECF No. 16).

2.     The Supreme Court of the United States issued an Opinion dated February 21, 2024, reversing the decision of the Third Circuit Court of Appeals, and holding that choice-of-law provisions in maritime contracts are presumptively enforceable under federal maritime law, with narrow exceptions not applicable in

that case. A true and correct copy of the Supreme Court's Opinion is attached hereto as Exhibit 1.

Dated: July 16, 2024

Respectfully Submitted,

The Goldman Maritime Law Group

/s/ Michael I. Goldman
Michael I. Goldman, Esq.
The Goldman Maritime Law Group
233 Harvard St., Suite 211
Brookline, MA 02446
617-671-8657 (Cel)
617-566-4200 (Fax)
michael@goldmanmaritime.com

George R. Zacharkow, Esq.

**Counsel for Plaintiff, Clear Spring Property and Casualty Company**

Dickie, McCamey & Chilcote, P.C.

/s/ Devon Ferris
Dennis A. Watson
Devon F. Ferris
Two PPG Place, Suite 400
Pittsburgh, PA 15222
412-281-7272
888-811-7144 (Fax)
dwatson@dmclaw.com
dferris@dmclaw.com

**Counsel for Defendant, Matador Sportfishing LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2024, the foregoing document was served upon all counsel of record electronically via the court's electronic docketing mail system.

The Goldman Maritime Law Group

*/s/ Michael I. Goldman*
Michael I. Goldman, Esq.
The Goldman Maritime Law Group
233 Harvard St., Suite 211
Brookline, MA 02446
617-671-8657 (Cel)
617-566-4200 (Fax)
michael@goldmanmaritime.com

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GREAT LAKES INSURANCE SE v. RAIDERS RETREAT REALTY CO., LLC

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 22–500.  Argued October 10, 2023—Decided February 21, 2024

Great Lakes Insurance and Raiders Retreat Realty Co. entered a maritime insurance contract. Great Lakes was organized in Germany and headquartered in the United Kingdom, and Raiders was headquartered in Pennsylvania. The parties' contract selected New York law to govern any future disputes. Raiders' boat subsequently ran aground in Florida. Great Lakes denied coverage for the accident and filed a related declaratory judgment action in the U. S. District Court for the Eastern District of Pennsylvania. Raiders responded by advancing contract claims against Great Lakes under Pennsylvania law. The District Court enforced the choice-of-law provision in the parties' contract and rejected Raiders' Pennsylvania-law contract claims. The Third Circuit recognized the presumptive validity and enforceability of choice-of-law provisions in maritime contracts, but held that presumption must yield to a strong public policy of the State where a suit is brought. The Third Circuit remanded for the District Court to consider whether applying New York law would violate Pennsylvania's public policy regarding insurance.

*Held*: Choice-of-law provisions in maritime contracts are presumptively enforceable under federal maritime law, with narrow exceptions not applicable here. Pp. 3–13.

(a) Article III's grant of federal jurisdiction to "all Cases of admiralty and maritime Jurisdiction," §2, cl. 1, contemplates a uniform system of maritime law across the country, see *Norfolk Southern R. Co.* v. *James N. Kirby, Pty Ltd.*, 543 U. S. 14, 28, to promote interests of navigation, commerce, and diplomatic relations. To maintain uniformity, federal courts "make decisional law" for maritime cases, *id.*, at 23, based on sources including "judicial opinions, legislation, treatises,

and scholarly writings." *Air & Liquid Systems Corp.* v. *DeVries*, 586 U. S. 446, 452. Federal courts follow previously "established" maritime rules, see *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.*, 348 U. S. 310, 314, and may create uniform maritime rules if no established rule exists. See, e.g., *Norfolk Southern*, 543 U. S., at 23. Pp. 3–10.

(1) Longstanding precedent in both this Court and the Courts of Appeals establishes a federal maritime rule that choice-of-law provisions in maritime contracts are presumptively enforceable. In an analogous context, the Court has pronounced that forum-selection clauses in maritime contracts are "prima facie valid" under federal maritime law and "should be enforced unless" doing so would be unreasonable. *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1, 10. Like choice-of-law provisions, forum-selection clauses have "the salutary effect of dispelling any confusion" on the manner for resolving future disputes, thereby slashing the "time and expense of pretrial motions." *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U. S. 585, 593–594. The Court's decisions on the enforceability of forum-selection clauses dictate the same conclusion for choice-of-law provisions. Pp. 4–6.

(2) This Court's decision in *Wilburn Boat Co.* v. *Fireman's Fund Insurance Co.*, 348 U. S. 310, does not hold otherwise. *Wilburn Boat* did not involve a choice-of-law provision, and held only that state law applied as a gap-filler in the absence of a uniform federal maritime rule on a warranty issue. *Id.*, at 314–316. Where, as here, a uniform federal rule governs the enforceability of choice-of-law clauses in maritime contracts, no gap exists to be filled by state law. And while *Wilburn Boat* referenced States' traditional responsibility for regulating insurance, see *id.*, at 316–319, preserving that responsibility does not speak to the concern addressed by a choice-of-law provision, namely, which state law applies in a given case. Nothing in *Wilburn Boat* prevented this Court in *The Bremen* and *Carnival Cruise* from concluding as a matter of federal maritime law that forum-selection clauses are presumptively enforceable. And contrary to Raiders' suggestion, nothing in *Wilburn Boat* purports to override parties' choice-of-law clauses in maritime contracts generally, or in the subset of marine insurance contracts specifically. Pp. 7–10.

(b) Raiders does not claim any recognized exception to the presumptive enforceability of choice-of-law clauses in maritime contracts. Raiders seeks an additional exception for situations where enforcing the law of the State designated by the contract would contravene the public policy of the State with the greatest interest in the dispute. But Raiders' proposal lacks support in case law, and its application would undermine the fundamental purpose of choice-of-law clauses. Further, Raiders' position would merely allow the substitution of one body of state law (the law of the State with the purported greatest interest in

Syllabus

the matter) for another (the law of the State designated by a choice-of-law provision), a substitution no federal maritime interest supports. Finally, the Court rejects the suggestion to adopt the choice-of-law approach set forth in §187(2)(b) of the Second Restatement of Conflict of Laws, as that rule arose out of interstate cases and does not deal directly with federal-state conflicts, including those that arise in federal enclaves like maritime law. Pp. 10–13.

47 F. 4th 225, reversed.

KAVANAUGH, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 22–500

## GREAT LAKES INSURANCE SE v. RAIDERS RETREAT REALTY CO., LLC

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[February 21, 2024]

JUSTICE KAVANAUGH delivered the opinion of the Court.

Maritime contracts often contain choice-of-law provisions that designate the law of a particular jurisdiction to control future disputes. The enforceability of those choice-of-law provisions is governed by federal maritime law. Applying federal maritime law in this case, we conclude that choice-of-law provisions in maritime contracts are presumptively enforceable, with certain narrow exceptions not applicable here.

I

To insure its boat, Raiders Retreat Realty, a Pennsylvania business, purchased a policy from Great Lakes Insurance, a company organized in Germany and headquartered in the United Kingdom. The insurance contract included a choice-of-law provision that, as relevant here, selected New York law to govern future disputes between the parties.

Years later, Raiders' boat ran aground near Fort Lauderdale, Florida. After Raiders submitted an insurance claim, Great Lakes denied coverage. Great Lakes asserted that Raiders breached the insurance contract by failing to maintain the boat's fire-suppression system. According to

Great Lakes, the breach voided the insurance contract in its entirety, even though the boat's fire-suppression system did not contribute to the accident.

Great Lakes sued Raiders for declaratory relief in the U. S. District Court for the Eastern District of Pennsylvania. Great Lakes alleged that Raiders breached the insurance contract and that the breach allowed Great Lakes to deny insurance coverage.

In response, Raiders advanced contract claims under Pennsylvania law. Great Lakes countered that Pennsylvania law did not apply to this dispute; rather, New York law applied under the choice-of-law provision in the parties' insurance contract.

The District Court agreed with Great Lakes. The court reasoned that federal maritime law regards choice-of-law provisions as presumptively valid and enforceable. 521 F. Supp. 3d 580, 585–586 (ED Pa. 2021). The court therefore enforced the parties' choice-of-law provision and rejected Raiders' Pennsylvania-law contract claims. *Id.*, at 588–589.

The U. S. Court of Appeals for the Third Circuit vacated that judgment. 47 F. 4th 225 (2022). The Court of Appeals held that choice-of-law provisions in maritime contracts are presumptively enforceable as a matter of federal maritime law, but nonetheless must yield to a strong public policy of the State in which suit is brought—here, Pennsylvania's public policy regarding insurance. *Id.*, at 230, 233. The court remanded for the District Court to consider whether applying New York contract law here would violate Pennsylvania's public policy and whether Pennsylvania law therefore should apply. *Id.*, at 233.

This Court granted certiorari to resolve a split in the Courts of Appeals regarding the enforceability of choice-of-law provisions in maritime contracts. See 598 U. S. ___ (2023). Compare *Great Lakes Ins. SE* v. *Raiders Retreat Realty Co., LLC*, 47 F. 4th, at 233, with *Galilea, LLC* v.

*AGCS Marine Ins. Co.*, 879 F. 3d 1052, 1060 (CA9 2018); *Stoot* v. *Fluor Drilling Servs., Inc.*, 851 F. 2d 1514, 1517 (CA5 1988).

## II

Under the Constitution, federal courts possess authority to create and apply maritime law. Article III of the Constitution extends the federal judicial power to "all Cases of admiralty and maritime Jurisdiction." U. S. Const., Art. III, § 2, cl. 1. That grant of jurisdiction contemplates a system of maritime law "'coextensive with, and operating uniformly in, the whole country.'" *Norfolk Southern R. Co.* v. *James N. Kirby, Pty Ltd.*, 543 U. S. 14, 28 (2004) (quoting *American Dredging Co.* v. *Miller*, 510 U. S. 443, 451 (1994)). The purposes of that uniform system include promoting "the great interests of navigation and commerce" and maintaining the United States' "diplomatic relations." 3 J. Story, Commentaries on the Constitution of the United States §1666, p. 533 (1st ed. 1833); see also *Norfolk Southern*, 543 U. S., at 28; *Exxon Corp.* v. *Central Gulf Lines, Inc.*, 500 U. S. 603, 608 (1991).

To maintain that uniform system, federal courts "make decisional law" for maritime cases. *Norfolk Southern*, 543 U. S., at 23. When a federal court decides a maritime case, it acts as a "federal common law court, much as state courts do in state common-law cases." *Air & Liquid Systems Corp.* v. *DeVries*, 586 U. S. 446, 452 (2019) (internal quotation marks omitted); see *Dutra Group* v. *Batterton*, 588 U. S. 358, 360 (2019). "Subject to direction from Congress," the federal courts fashion maritime rules based on, among other sources, "judicial opinions, legislation, treatises, and scholarly writings." *Air & Liquid Systems*, 586 U. S., at 452; see also *Exxon Co., U. S. A.* v. *Sofec, Inc.*, 517 U. S. 830, 839 (1996); *East River S. S. Corp.* v. *Transamerica Delaval Inc.*, 476 U. S. 858, 864 (1986).

Exercising that authority, federal courts follow

previously "established" maritime rules. *Wilburn Boat Co.*
v. *Fireman's Fund Ins. Co.*, 348 U. S. 310, 314 (1955). No
bright line exists for determining when a federal maritime
rule is "established," but a body of judicial decisions can
suffice. See *Bisso* v. *Inland Waterways Corp.*, 349 U. S. 85,
89–90 (1955). In the absence of an established rule, federal
courts may create uniform maritime rules. See, *e.g.*,
*Norfolk Southern*, 543 U. S., at 23. When no established
rule exists, and when the federal courts decline to create a
new rule, federal courts apply state law. See *Wilburn Boat*,
348 U. S., at 320–321. For purposes of this general
overview, we will stop there, as the "issue of federalism in
admiralty and the scope of application of state law in
maritime cases is one of the most perplexing issues in the
law." 1 T. Schoenbaum, Admiralty and Maritime Law §4:4,
p. 268 (6th ed. 2018).

## A

The initial question here is whether there is an
established federal maritime rule regarding the
enforceability of choice-of-law provisions. The answer is
yes. Longstanding precedent establishes a federal
maritime rule: Choice-of-law provisions in maritime
contracts are presumptively enforceable. As a leading
treatise says, it is "well established in admiralty that choice
of law clauses" will "normally be enforced." 1 Schoenbaum,
Admiralty and Maritime Law §5:19, at 427; see also *id.*,
§4:4, at 275; 2 *id.*, §19:6, at 431–432 (similar).

Courts of Appeals have consistently decided that choice-
of-law provisions in maritime contracts are presumptively
enforceable as a matter of federal maritime law. See *Great
Lakes Ins. SE* v. *Wave Cruiser LLC*, 36 F. 4th 1346, 1353–
1354 (CA11 2022); *Great Lakes Reins. (UK) PLC* v. *Durham
Auctions, Inc.*, 585 F. 3d 236, 242–243 (CA5 2009); *Triton
Marine Fuels Ltd., S. A.* v. *M/V Pacific Chukotka*, 575 F. 3d
409, 413 (CA4 2009); *Chan* v. *Society Expeditions, Inc.*, 123
F. 3d 1287, 1296–1297 (CA9 1997); *Milanovich* v. *Costa*

*Crociere, S. p. A.*, 954 F. 2d 763, 768 (CADC 1992).

Although no recent case of this Court has addressed the issue, the Court has traditionally enforced choice-of-law provisions in maritime contracts. The Court has recognized, for example, that the parties to a maritime contract may select the governing law by "clearly manifest[ing]" an intent to follow that law "when entering into the contract." *Liverpool & Great Western Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 458 (1889); see also *The Kensington*, 183 U. S. 263, 269 (1902). The Court has stated that "it is no injustice" to resolve disputes under the law that parties have "agreed to be bound by." *London Assurance* v. *Companhia de Moagens do Barreiro*, 167 U. S. 149, 161 (1897). As the Court further opined in 1953: "Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply." *Lauritzen* v. *Larsen*, 345 U. S. 571, 588–589 (1953).

The Court's traditional enforcement of choice-of-law provisions in maritime contracts corresponds to the Court's precedents in the analogous forum-selection context. The Court has pronounced that forum-selection clauses in maritime contracts are "prima facie valid" under federal maritime law and "should be enforced unless" doing so would be "'unreasonable' under the circumstances." *The Bremen* v. *Zapata Off-Shore Co.*, 407 U. S. 1, 10 (1972); see also *Carnival Cruise Lines, Inc.* v. *Shute*, 499 U. S. 585, 593–594 (1991). Like choice-of-law provisions, forum-selection clauses respect "ancient concepts of freedom of contract." *The Bremen*, 407 U. S., at 11. And like choice-of-law provisions, forum-selection clauses have "the salutary effect of dispelling any confusion" on the manner for resolving future disputes, thereby slashing the "time and expense of pretrial motions." *Carnival Cruise*, 499 U. S., at 593–594.

For those reasons, as Courts of Appeals have explained, this Court's decisions in *The Bremen* and *Carnival Cruise* on the enforceability of forum-selection clauses dictate the same conclusion for choice-of-law provisions. See, *e.g.*, *Milanovich*, 954 F. 2d, at 768. That is especially true given that courts historically have expressed more skepticism of forum-selection clauses than of choice-of-law clauses because forum-selection clauses can force parties to litigate in inconvenient places. See *The Bremen*, 407 U. S., at 9; 6 S. Williston, Law of Contracts §1725 (rev. ed. 1938).

As courts and commentators have recognized, the presumption of enforceability for choice-of-law provisions in maritime contracts facilitates maritime commerce by reducing uncertainty and lowering costs for maritime actors. Maritime commerce traverses interstate and international boundaries, so when a maritime accident or dispute occurs, time-consuming and difficult questions can arise about which law governs. Choice-of-law provisions "reduce legal uncertainty." J. Coyle, The Canons of Construction for Choice-of-Law Clauses, 92 Wash. L. Rev. 631, 633, n. 6 (2017). By identifying the governing law in advance, choice-of-law provisions allow parties to avoid later disputes—as well as ensuing litigation and its attendant costs. Cf. *Carnival Cruise*, 499 U. S., at 593–594. Choice-of-law provisions also discourage forum shopping, further cutting the costs of litigation.

Moreover, by supplying some advance assurance about the governing law, choice-of-law provisions help maritime shippers decide on the front end "what precautions to take" on their boats, *American Dredging*, 510 U. S., at 454, and enable marine insurers to better assess risk, see Brief for American Institute of Marine Underwriters et al. as *Amici Curiae* 12–13. Choice-of-law provisions therefore can lower the price and expand the availability of marine insurance. In those ways, choice-of-law provisions advance a fundamental purpose of federal maritime law: the

"'protection of maritime commerce.'" *Exxon Corp.*, 500 U. S., at 608 (quoting *Sisson* v. *Ruby*, 497 U. S. 358, 367 (1990)).

B

Raiders argues that no established federal maritime rule governs the enforceability of choice-of-law provisions, and it further contends that federal courts should assess those provisions under state law. Raiders does not specify whether it thinks that federal maritime law should incorporate state law on this issue, or instead that state law is not preempted by federal maritime law and applies of its own force. See Tr. of Oral Arg. 52–53.

In any event, Raiders argues that this Court's 1955 decision in *Wilburn Boat Co.* v. *Fireman's Fund Insurance Co.*, 348 U. S. 310, precludes a uniform federal presumption of enforceability for choice-of-law provisions in maritime contracts. But that case did not involve a choice-of-law provision. Rather, the *Wilburn Boat* Court simply determined what substantive rule applied when a party breached a warranty in a marine insurance contract. See *id.*, at 311–316. The Court concluded that no "established federal admiralty rule" governed the warranty issue. *Id.*, at 314; see also *id.*, at 314–316. And the Court declined to create a federal maritime rule on that question, both because States historically regulated insurance and because federal courts were poorly positioned to "unify insurance law on a nationwide basis." *Id.*, at 319; see also *id.*, at 316–320. The Court therefore ordered that the warranty issue be tried "under appropriate state law." *Id.*, at 321.

Great Lakes contends that *Wilburn Boat*'s reliance on state law is in tension with the Court's modern maritime jurisprudence, which tends to place greater emphasis on the need for uniformity in maritime law. See *Norfolk Southern*, 543 U. S., at 28; *Kossick* v. *United Fruit Co.*, 365

U. S. 731, 741–742 (1961); see also *American Dredging*, 510 U. S., at 452–453 (noting tension between *Wilburn Boat* and *Kossick*); *Wilburn Boat*, 348 U. S., at 322, 324 (Frankfurter, J., concurring in result) (arguing that *Wilburn Boat* should "not be found controlling" in the future beyond the case's "essentially localized" facts).

But here, we need not resolve any such tension because *Wilburn Boat* does not control the analysis of choice-of-law provisions in maritime contracts. To reiterate, *Wilburn Boat* did not involve a choice-of-law provision, and the case therefore affords limited guidance on that distinct issue. Moreover, *Wilburn Boat* held only that state law applied as a gap-filler in the absence of a uniform federal maritime rule on a warranty issue. 348 U. S., at 314–316. Here, however, no gap exists because a uniform federal rule governs the enforceability of choice-of-law clauses in maritime contracts.

In addition, *Wilburn Boat* rested in part on the difficulty of creating substantive maritime insurance law from scratch through case-by-case adjudication. See *id.*, at 319–320. That concern is absent when the question is whether the parties may choose the governing law to apply. *Wilburn Boat* also cited States' traditional responsibility for regulating insurance. See *id.*, at 316–319. But preserving that responsibility does not speak to which state law applies in a given case, which is what a choice-of-law provision addresses. Finally, *Wilburn Boat* did not prevent this Court in *The Bremen* and *Carnival Cruise* from concluding as a matter of federal maritime law that forum-selection clauses are presumptively enforceable. For all of those reasons, *Wilburn Boat* does not preclude a uniform federal presumption of enforceability for choice-of-law provisions in maritime contracts.

Raiders suggests that even if federal maritime law presumes the enforceability of choice-of-law provisions in maritime contracts, *Wilburn Boat* recognized a kind of

"insurance exceptionalism" where this Court will apply state law in marine *insurance* cases. Tr. of Oral Arg. 45. We disagree. Nothing in *Wilburn Boat* purports to override parties' choice-of-law clauses in maritime contracts generally, or in the subset of marine insurance contracts specifically.

Moreover, in the forum-selection context, *The Bremen* and *Carnival Cruise* apply to marine insurance contracts as well as to other maritime contracts. See *Carnival Cruise*, 499 U. S., at 593–595; *The Bremen*, 407 U. S., at 10–14. We discern no good reason for a different rule in the choice-of-law context. Indeed, the uniformity and predictability resulting from choice-of-law provisions are especially important for marine insurance contracts given that marine insurance is "an integral part of virtually every maritime transaction, and maritime commerce is a vital part of the nation's economy." M. Sturley, Restating the Law of Marine Insurance: A Workable Solution to the *Wilburn Boat* Problem, 29 J. Mar. L. & Com. 41, 45 (1998).

In applying maritime rules, we also may assess whether our decision produces an "equitable result." *Norfolk Southern*, 543 U. S., at 35. In considering Raiders' argument for applying state law, it bears recalling *Wilburn Boat*'s aftermath in maritime law and the maritime industry. See G. Gilmore & C. Black, Law of Admiralty §§1–17, 2–8 (2d ed. 1975). After *Wilburn Boat*, maritime actors realized that a lot would depend on which State's law governed each individual maritime dispute—a question that would be unclear in advance. See 2 Schoenbaum, Admiralty and Maritime Law §19:9. Choice-of-law provisions soon emerged as a ready answer to that problem. See W. von Bittner, The Validity and Effect of Choice of Law Clauses in Marine Insurance Contracts, 53 Ins. Counsel J. 573, 573, 578–579 (1986). And particularly since *The Bremen* resolved the analogous forum-selection issue in 1972, most maritime actors have justifiably believed that

choice-of-law provisions are presumptively enforceable as a matter of federal maritime law. See 1 Schoenbaum, Admiralty and Maritime Law §5:19, at 427. That widespread understanding is correct, and Raiders' argument for disrupting that longstanding consensus is essentially a solution in search of a problem.

The bottom line: As a matter of federal maritime law, choice-of-law provisions in maritime contracts are presumptively enforceable.

### III

Of course, to say that choice-of-law clauses are *presumptively* enforceable as a matter of federal maritime law means that there are exceptions when the clauses are not enforceable. The parties agree that the exceptions are narrow—indeed, Raiders "freely concede[s] that in most every instance, a choice-of-law provision contained in a maritime insurance contract will be effective." Tr. of Oral Arg. 54.

In particular, the parties agree that courts should disregard choice-of-law clauses in otherwise valid maritime contracts when the chosen law would contravene a controlling federal statute, see *Knott* v. *Botany Mills*, 179 U. S. 69, 77 (1900), or conflict with an established federal maritime policy, see *The Kensington*, 183 U. S. 263, 269–271 (1902). For example, *The Kensington* declined to enforce a choice-of-law clause because the chosen law would have released a carrier from liability for negligence—a result that federal maritime law forbids. See *ibid.*

The parties further agree that, as a matter of federal maritime law, courts may disregard choice-of-law clauses when parties can furnish no reasonable basis for the chosen jurisdiction. Cf. *Carnival Cruise*, 499 U. S., at 594–595; *The Bremen*, 407 U. S., at 10, 16–17. For example, it would be unreasonable to pick the law of a distant foreign country without some rational basis for doing so. That said, the "no

reasonable basis" exception must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because, for example, that jurisdiction's law is "well developed, well known, and well regarded." Brief for American Institute of Marine Underwriters et al. as *Amici Curiae* 17.

Raiders does not claim that either of those exceptions applies here. To be specific, Raiders does not assert that any federal statute or established federal maritime policy precludes enforcing the parties' choice-of-law provision. And Raiders does not claim that the parties' choice of New York's "well-known and highly elaborated commercial law" was unreasonable. Restatement (Second) of Conflict of Laws §187, Comment *f*, p. 567 (1969); see also *The Bremen*, 407 U. S., at 13 (approving the choice of a "neutral forum").

Unable to successfully invoke those exceptions, Raiders says that federal maritime law should recognize an additional exception when enforcing the law of the State designated by the contract would contravene the fundamental public policy of the State with the greatest interest in the dispute. We disagree with that argument. Indeed, Raiders' request for that novel maritime exception is essentially a repackaged version of its initial argument that the enforceability of choice-of-law provisions in maritime contracts should be determined by state law. The argument fares no better here, for essentially the same reasons.

A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations. The ensuing disuniformity and uncertainty caused by such an approach would undermine the fundamental purpose of choice-of-law clauses in maritime contracts: uniform and stable rules for maritime actors. See *supra*, at 4–7; *Carnival Cruise*, 499 U. S., at 593–594; *The Bremen*, 407

U. S., at 13–14.

Raiders' proposed exception also lacks historical roots. This Court has never discarded a choice-of-law provision in a maritime contract on the ground that enforcement of the choice-of-law provision would violate state law. On the contrary, the Court has enforced those clauses without so much as mentioning state law. See, *e.g., London Assurance,* 167 U. S., at 161; see also *Siegelman* v. *Cunard White Star Ltd.,* 221 F. 2d 189, 193, 195 (CA2 1955) (Harlan, J.).

Nor has the Court looked to state law in the analogous forum-selection context. Raiders points to a sentence in *The Bremen* stating that a "contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." 407 U. S., at 15. But that sentence, read in context, was referring to the possibility of a conflict between federal maritime law and a foreign country's law—there, England's. See *ibid.* State law was not relevant to the case. *The Bremen* said nothing about the law or public policy of Florida. See *id.,* at 9–20. *Carnival Cruise* likewise said nothing about the law or public policy of Washington. See 499 U. S., at 590–595.

Raiders' position similarly finds no footing in the decisions of the Courts of Appeals. The opinion of the Third Circuit in this case is the first by a Federal Court of Appeals to hold that a State's strong public policy may justify disregarding a maritime choice-of-law clause.

The lack of case law supporting Raiders' state-law argument comes as no surprise given that Raiders' position would merely allow the substitution of one body of state law (the law of the State with the purported greatest interest in the matter) for another (the law of the State designated by a choice-of-law provision). As Raiders seems to acknowledge, federal maritime law offers no reason to categorically prefer the law of one State over another State. See Brief for Respondent 41–42. Here, for example, no

federal maritime interest supports applying Pennsylvania law rather than New York law.

For the same reasons, we disagree with Raiders' related suggestion that we adopt the choice-of-law approach set forth in §187(2)(b) of the Second Restatement of Conflict of Laws. In relevant part, that subsection says that choice-of-law provisions are enforceable unless they conflict with "a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of Laws §187(2)(b). As the commentary to the Restatement carefully explains, however, that rule arose out of interstate cases and does not deal directly with federal-state conflicts, including those that arise in federal enclaves like maritime law. See *id.* §2, Comment *c*; §3, Comment *d*; §10, Comment *a*. For reasons already stated, that Restatement rule is a poor fit for maritime cases. It would operate like a general exception for state law that would prevent maritime actors from prospectively identifying the law to govern future disputes. The §187(2)(b) exception would require parties to litigate which State possesses the "materially greater interest" in the dispute, and thereby create significant uncertainty. As explained above, no federal maritime interest favors injecting that kind of disuniformity and unpredictability into maritime commerce. We therefore decline to adopt §187(2)(b) for federal maritime law.

\* \* \*

In sum, choice-of-law provisions in maritime contracts are presumptively enforceable as a matter of federal maritime law, with certain narrow exceptions, and no exception to the presumption applies in this case. We reverse the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 22–500

———————

## GREAT LAKES INSURANCE SE *v.* RAIDERS RETREAT REALTY CO., LLC

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[February 21, 2024]

JUSTICE THOMAS, concurring.

I join the Court's opinion in full because it correctly concludes that federal maritime law governs the enforceability of choice-of-law provisions in maritime contracts. In arguing that state law should govern, Raiders Retreat Realty relies principally on this Court's decision in *Wilburn Boat Co.* v. *Fireman's Fund Ins. Co.*, 348 U. S. 310 (1955). I write separately to highlight how *Wilburn Boat* rests on flawed premises and, more broadly, how the decision is at odds with the fundamental precept of admiralty law. This Court has already retreated from *Wilburn Boat*'s unsound holding, limiting it to local disputes. Litigants and courts applying *Wilburn Boat* in the future should not ignore these developments.

The Constitution extends the judicial power to "all Cases of admiralty and maritime Jurisdiction." Art. III, §2, cl. 1. We have long understood this grant of jurisdiction to establish a uniform body of substantive law called the general maritime law. See *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 160–161 (1920); *The Lottawanna*, 21 Wall. 558, 575 (1875). For almost 150 years before *Wilburn Boat*, it was well established that marine-insurance disputes fell within that admiralty jurisdiction. See *Insurance Co.* v. *Dunham*, 11 Wall. 1, 35 (1871); *DeLovio* v. *Boit*, 7 F. Cas. 418, 444 (No. 3,776) (CC Mass. 1815) (Story, J.). And, it

was widely accepted that courts applied general maritime law in such disputes as a result. See *Watts* v. *Camors*, 115 U. S. 353, 362 (1885). *Wilburn Boat* upset this understanding by inviting courts to apply state law in a broad range of marine-insurance disputes. That break from settled practice was unwarranted.

*Wilburn Boat* involved an insurance claim on a small houseboat that was destroyed by fire while moored in Lake Texoma, an artificial inland lake. 348 U. S., at 311. The houseboat's owner conceded that he breached the marine-insurance policy's express warranty limiting his use to private pleasure by carrying passengers for hire. *Ibid.* Even though that breach was unrelated to the fire, the insurer declined coverage on breach-of-warranty grounds, arguing that federal maritime law requires literal compliance with express warranties and that any breach thus releases the insurer from liability. See *id.*, at 311–312. The owner countered that Texas law—not federal maritime law—should determine the consequences of a breach of warranty, and that breaching the private-pleasure warranty would not justify denying coverage under Texas law. *Id.*, at 312. To resolve this choice-of-law dispute, the Court posed two questions: "(1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?" *Id.*, at 314. Answering both questions in the negative, this Court concluded that state law governs the effect of a breach of warranty in a marine-insurance policy. *Id.*, at 316, 320–321.

*Wilburn Boat*'s rationale is deeply flawed. The Court's first conclusion, that there was no established federal admiralty rule requiring literal compliance with express warranties, is indefensible. See *id.*, at 314–316. Treatises from the early 19th century to the 20th century recognized the literal compliance rule as part of the general maritime law governing marine insurance. See, *e.g.*, 2 R. Simey & G. Mitchison, Arnould on the Law of Marine Insurance and

Average §635, p. 863 (12th ed. 1939); 2 T. Parsons, Maritime Law 104–105 (1859); 1 J. Park, A System of the Law of Marine Insurances 422 (6th ed. 1809); J. Burn, Law of Marine Insurances 80 (1801). By the time of *Wilburn Boat*, at least five Courts of Appeals had applied that rule in marine-insurance cases. See, *e.g.*, *Home Ins. Co.* v. *Ciconett*, 179 F. 2d 892, 894 (CA6 1950); *Robinson* v. *Home Ins. Co.*, 73 F. 2d 3, 4 (CA5 1934); *Aetna Ins. Co.* v. *Houston Oil & Transp. Co.*, 49 F. 2d 121, 124 (CA5 1931); *Fidelity-Phenix Ins. Co.* v. *Chicago Title & Trust Co.*, 12 F. 2d 573, 574 (CA7 1926); *Shamrock Towing Co.* v. *American Ins. Co.*, 9 F. 2d 57, 60 (CA2 1925); *Canton Ins. Office* v. *Independent Transp. Co.*, 217 F. 213, 217 (CA9 1914). And, as Justice Reed highlighted in dissent, "[n]o case h[eld] to the contrary." *Wilburn Boat*, 348 U. S., at 326.

The Court's only rejoinder was that some Court of Appeals decisions *may* have drawn the literal compliance rule from state or general common law, rather than general maritime law. *Id.*, at 315. Even so, the Court never explained why the two decisions that identified general maritime law as the source of the literal compliance rule were not enough to "establish" a federal admiralty rule. See *Home Ins. Co.*, 179 F. 2d, at 894; *Aetna Ins. Co.*, 49 F. 2d, at 124. Nor did it grapple with the seemingly universal endorsement of the rule in marine-insurance treatises. See *Air & Liquid Systems Corp.* v. *DeVries*, 586 U. S. 446, 452 (2019) ("In formulating federal maritime law, the federal courts may examine, among other sources, judicial opinions, legislation, treatises, and scholarly writings"). At any rate, that some decisions were not explicit about the source of the literal compliance rule is unsurprising given the common understanding that general maritime law applied in admiralty cases. See *Watts*, 115 U. S., at 362. And, it is telling that many of those decisions rely on the classic marine-insurance treatise, Arnould on Marine Insurance. See *Robinson*, 73 F. 2d, at 4; *Fidelity-Phenix*, 12 F. 2d, at 574;

*Shamrock Towing*, 9 F. 2d, at 60; *Canton*, 217 F., at 217. In short, at the time of *Wilburn Boat*, the existence of an established federal maritime rule addressing the effect of a breach of warranty could not plausibly be questioned.

The *Wilburn Boat* Court's justification for not creating a federal admiralty rule is equally problematic. It reasoned that general insurance regulation is an area that historically has been left to the States and that courts are ill suited for crafting marine insurance law on a case-by-case basis. See 348 U. S., at 316–317, 319–320. The fact that States have traditionally provided rules of decision for *general* insurance law is no reason to leave *marine* insurance law to them. States have traditionally provided rules of decision for general contract and tort law, yet federal courts continue to develop maritime law in those areas. See, *e.g., Air & Liquid Systems Corp.*, 586 U. S., at 453–455; *Exxon Shipping Co.* v. *Baker*, 554 U. S. 471, 506–507 (2008); *Norfolk Southern R. Co.* v. *James N. Kirby, Pty Ltd.*, 543 U. S. 14, 33 (2004); *Bisso* v. *Inland Waterways Corp.*, 349 U. S. 85, 90 (1955). The *Wilburn Boat* Court's doubts about the ability of judges to craft marine-insurance rules on a case-by-case basis is simply a critique of the common-law process. But, federal courts exercising admiralty jurisdiction act as common-law courts, *Air & Liquid Systems Corp.*, 586 U. S., at 452, and the difficulties inherent in that role do not justify abandoning it.

A noticeable deficiency of *Wilburn Boat* was its failure to even acknowledge the uniformity principle—a singularly important concept in admiralty law. We have long recognized that the Constitution's grant of admiralty jurisdiction "referred to a system of law coextensive with, and operating uniformly in, the whole country," and empowered federal courts to maintain that national system using a common-law process. *The Lottawanna*, 21 Wall., at 575. Only a uniform system of maritime law, the Court has explained, can ensure the "consistency at which the Constitution aimed on

all subjects of a commercial character affecting" interstate and foreign commerce. *Ibid.* This need for uniformity has been the "touchstone" for determining the scope of admiralty jurisdiction and the extent to which state law can be given effect in admiralty cases. *Kirby*, 543 U. S., at 28; see also *Kossick* v. *United Fruit Co.*, 365 U. S. 731, 741–742 (1961); *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 216 (1917); *DeLovio*, 7 F. Cas., at 443. Notwithstanding this settled principle, however, *Wilburn Boat* said nothing about uniformity. It did not so much as consider whether a need for uniformity required a federal rule on the effect of breaching an express warranty in a marine-insurance contract. This silence is inexplicable given that both Justice Frankfurter's concurrence and Justice Reed's dissent discussed uniformity at length. See 348 U. S., at 322–324 (Frankfurter, J., concurring in result); *id.,* at 332–334 (Reed, J., dissenting). As Justice Reed lamented, "the Court's decision strikes deep into the principle of a uniform admiralty law," and worse, it did so without explaining why. *Id.,* at 327.

Unsurprisingly, *Wilburn Boat* has been met with universal criticism over the past 70 years. A mere two years after the decision, the Nation's foremost admiralty scholars wrote a stinging critique in their treatise. See G. Gilmore & C. Black, The Law of Admiralty 44–45, 62–63 (1957). *Wilburn Boat*'s rationale, they explained, suggests that state law provides the rule of decision "when it happens that such cases have not presented themselves to the federal courts in such number or with the issues so posed as to result in decision of the point involved." Gilmore, Law of Admiralty, at 62 (emphasis deleted). This, they concluded, is "a nightmarish solution" because "[s]ome of the most important and obvious propositions in marine insurance law are rarely litigated." *Id.,* at 62–63. One exhaustive study of the opinion also concluded that *Wilburn Boat* "was poorly reasoned and its holding poorly articulated." J. Goldstein,

The Life and Times of *Wilburn Boat*: A Critical Guide (Part I), 28 J. Mar. L. & Com. 395, 396 (1997). It explained that *Wilburn Boat* did not "articulate any convincing theory of the extent to which uniformity is a basic characteristic of maritime law," "showed little appreciation" for the Judiciary's role in fashioning the general maritime law, and "failed to produce a decision or analysis that would provide guidance to the lower courts." J. Goldstein, The Life and Times of *Wilburn Boat*: A Critical Guide (Part II), 28 J. Mar. L. & Com. 555, 591 (1997). And, a modern treatise explains that "*Wilburn Boat* has (1) produced a 'crazy-quilt' pattern of federal-state regulation of marine insurance; and (2) bogged the courts down in complex and confusing choice-of-law questions." 2 T. Schoenbaum, Admiralty and Maritime Law §19:9, p. 438 (6th ed. 2018).*

It is little wonder that this Court has retreated from *Wilburn Boat* in subsequent decisions, implicitly cabining its reach to "localized" disputes in accordance with Justice Frankfurter's concurrence. See 348 U. S., at 322. In *Kossick*, for example, this Court held that general maritime law, not a state statute of frauds, governed the validity of a shipowner's oral contract with a seaman. 365 U. S., at 732–733, 742. The Court attributed the decision in *Wilburn*

---

*Critiques of *Wilburn Boat* are too numerous to list comprehensively. See, *e.g.*, D. Robertson, S. Friedell, & M. Sturley, Admiralty and Maritime Law in the United States 465 (4th ed. 2020) ("For many informed observers, *Wilburn Boat* is the Supreme Court's most disappointing maritime-law decision"); H. Watson, A Fifty Year Retrospective on the American Law of Marine Insurance, 91 Tulane L. Rev. 855, 857 (2017) ("*Wilburn Boat* has been the subject of relentless well-deserved criticism"); G. Staring, *Wilburn Boat* is a Dead Letter: R. I. P., 42 J. Mar. L. & Com. 465, 468 (2011) ("Over a half century the decision has been repeatedly criticized for its shallow erroneousness"); 1 A. Parks, The Law and Practice of Marine Insurance and Average 13 (1987) ("*Wilburn* cast the law of marine insurance into a state of turmoil"); H. Baer, Admiralty Law of the Supreme Court 389 (3d ed. 1979) ("The *Wilburn Boat* case has left the admiralty bar in a state of utter confusion").

*Boat* in part to the inherently local nature of its dispute about "a contract of insurance on a houseboat established in the waters of a small artificial lake." 365 U. S., at 742. Fifty years later, we endorsed this narrow reading of *Wilburn Boat* in *Kirby*, holding that general maritime law governed a maritime contract for the carriage of goods primarily by sea. 543 U. S., at 18–19, 22–23. We explained that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Id.*, at 22–23. Today's decision further erodes *Wilburn Boat*'s foundation, and rightly so. See *ante,* at 7–9.

In light of these decisions, it is not clear what, if anything, is left of *Wilburn Boat*'s rationale. Yet, Raiders and some courts continue to understand *Wilburn Boat* to require application of state law in circumstances far different from the inherently local dispute at issue there. See, *e.g., Travelers Property Casualty Co. of Am.* v. *Ocean Reef Charters LLC,* 996 F. 3d 1161, 1169–1170 (CA11 2021); *In re Settoon Towing,* 720 F. 3d 268, 282–284 (CA5 2013). But see *Lloyd's of London* v. *Págan-Sánchez,* 539 F. 3d 19, 24 (CA1 2008) (recognizing that *Wilburn Boat* applies only to "inherently local" disputes (internal quotation marks omitted)). Litigants and courts should heed our instruction that general maritime law applies in maritime contract disputes unless they "so implicate local interests as to beckon interpretation by state law." *Kirby,* 543 U. S., at 27. *Wilburn Boat* reaches no further.